Spalding, J.
It was decided by this court, in Huber v. Huber’s Adm’rs, 10 Ohio, 371, that where money comes to a wife, in right of a former husband, and the second husband borrows it of her, and gives her a note for it, the note is good ; and after his death she may set it up in equity against his administrators.
*No new rule of equity jurisprudence was established by that decision. It was simply the application of sundry well-established principles to a now and interesting state of facts. In certain cases the wife has always been treated as a creditor to her husband’s estate. She has been recognized in that character in respect to her paraphernalia; as where “ the husband, in his lifetime, being under the necessity of raising money, pledges her jewels, etc,, and dies, leaving personal property more than sufficient to pay his debts. She shall have the aid of his personal estate to redeem her paraphernalia thus pledged.”
So, too, “ where real estate is devised for the payment of debts, and the executor takes tho paraphernalia, on account of a deficiency of assets in the personal funds, to pay the debts, she shall have the same right against the estate, so devised for the payment of debts, to refund to her the real value of her paraphernalia, as a creditor can have who has not paid his debt for the want of assets.” Reeve on Domestic Relations, 38. These benefits result to her, not by virtue of any agreement on the part of the husband, but by mere operation of law.
In another class of cases, where wives have made savings out of certain allowances, given to them by their husbands, for private expenditure during cohabitation, the amount will be decreed to them as against the representative of the husband; and this, too, in the absence of any agreement made for such an allowance before coverture. Clancy’s Husband and Wife, 272, 276.
It was settled at an early period, in England, that where a husband voluntarily allows his wife, after marriage, to make profit of the produce of his farm, her savings should be her own, subject, after the death of her husband, to no claims but those of creditors.
In Slanning v. Style, 3 P. Williams, 337, which has been a leading case on the subject we are now discussing, the chancellor held, that where the husband had borrowed £100 from *his wife, which she bad saved during coverture, from the sale of pigs, poultry, butter, etc., the same should be allowed to her, as a cred *444 itor, out of hia assets, although, it was objected that there was no Writing whatsoever, whereby to raise a separate property in the feme covert. The lord chancellor declared, that “ courts of equity had notice of these separate interests in femes covert, by the agreement of their husbands. That it was a reasonable encouragement of a wife’s frugality, and that such an agreement would be of no'avail, if it were determined by the death of the husband.”
A more general rule, and one that has been too long and too firmly settled to be easily shaken, is this : Where an agreement is made between the husband and wife, after marriage, by which prop■erty is set apart for her separate use, the agreement, although void at law, will be sustained in equity, unless the rights of creditors interfere. 3 Paige’s Ch. 452; 1 Devereaux’s Eq. 187; 3 Dessaussure’s Eq. 15815 Vt. 537.
Let an application of these juánciples be made to the facts in .the case at bar, and how stands it ? The wife of defendant’s intestate, during the existence of coverture, collected the sum of $100 from sales of milk and for labor in washing, performed for persons out of the family by herself and her two step-daughters. This sum her husband borrowed in order to pay his taxes, and delivered to her his agreement in writing, whereby, after acknowledging the receipt of the money at her hands, he stipulated to allow her an interest of six per cent, per annum as long as she lives; and agrees, in case she survives him, that the note shall be paid to her or her heirs, over and above her dower estate. What clearer appropriation of this fund, for the solo and separate use of the wife, could have been made by the husband ?
But it is insisted that the money, when it came into her hands, was not the money of the wife; and herein the case *is claimed to be unlike the one determined in 10 Ohio.
It is true that, in point of fact, the consideration of the note, in Huber v. Huber’s Adm’rs, was money that came to the wife from her first husband’s estate. It came to the hands of Huber as the money of his wife, and hence became his by force of law, as much as if he had acquired it by his own industry.
That case, however, did not turn upon the fact that the wife was the meritorious cause of the acquisition of the money; for that circumstance alone would fall far short of furnishing sufficient cause to justify a court of equity in setting up, as a valid charge *445 upon the estate of the husband, a claim of the wife for money lent and advanced to him during coverture.
It was the ascertainment of the husband’s intention to set apart and appropriate that amount of money for the exclusive benefit of his wife that induced a court of chancery to decree payment of the note from assets in the hands of his administrators.
The judge who pronounced the opinion says : “ A note from a husband to Ms wife is a very unusual thing; and this very circumstance in this case is, in consequence of its uncommonness, a convincing argument that he intended to withdraw the money, of which it was the evidence, from his own control, and give it absolutely to his wife.”
The note, or memorandum in writing, is of no other account in settling the question in equity than to make manifest the agreement of the parties, or, more properly speaking, to show the intention of the husband to appropriate the fund to the use of his-wife.
In the case cited from P. Wms., there was no note or agreement in writing binding the husband or his representatives to rej>ay,to the wife the £100; yet, on proof made that the money was borrowed from her savings, the chancellor decreed that she should, stand as a creditor of the husband’s estate to that extent. Nor was the money borrowed in that case the %noney of the wife. It arose from the sale of the husband’s poultry, etc., made by her, with his consent, and with the understanding that the avails of the trafile should inure to her sole benefit. Nevertheless, the poultry, pigs, etc., were his, and the money realized from the sale thereof was his, to a greater extent, if possible, than the avails of the milk sold and of labor performed over the wash-tub could, be claimed to be the property of defendant’s intestate.
The single circumstance disclosed by the evidence, that the two daughters of Elisha Wood by a former marriage, helped their step-mother to vend the milk and wash the clothes, can not be made to cut much of a figure in this case. At the outside, no stronger claim can be set up for defendant, on this branch of the caso, than that the money earned by the wife and daughters belonged to the husband and father. Let this be conceded as a legal proposition, and still the complainant’s case is made out in equity, if, as we find here, the same money was afterward set apart, and appropriated by the husband to the exclusive use of the wife. If *446 it could be determined that she had been the meritorious cause of acquiring the fund originally, it would only add strength to an equity sufficiently strong without it.
The claim set up in the answer, that the note was obtained from, the said Elisha Wood by undue influcnco and by threats, and was rather intended to pacify an unruly wife, than to make provision for a dutiful one, seems to rest entirely in the imagination of the administrator, or his attorney. There is not a particle of testimony to sustain it. On the contrary, the idea is repudiated by the principal witness in the case, when interrogated by the defendant’s counsel.
A majority of this court are of opinion that the equity of this oase is manifestly with the complainant, and will order and decree that the defendant pay the amount of the note mentioned in the bill, with interest, to complainant, as also the costs of this suit) from assets in his hands to be administered; *and that the same be made a charge upon the lands of the intestate until fully paid. Decree for complainant.